We'll proceed with our third argument of the morning, and then the court will take a brief recess after the third case, just for five minutes. Okay, the third appeal of the day is in number 23-1017, Henry Jones v. Amanda Lamb. Mr. Bissell? Yes, sir. Good morning. Good morning.  It's one of the rare times my name is pronounced correctly. Good morning, may it please the court. This case is about following the rules. Mr. Jones followed the rules. He took all the steps available to him to exhaust his administrative remedies, and he did not permit him to appeal. By contrast, the district court failed to follow the rules. It ignored Supreme Court precedent and this court's precedent when it granted Nurse Lamb's motion for summary judgment without considering relevant evidence, without following basic summary judgment standards, and without holding the required pay-to-hearing. Now there are two arguments that I'd like to make today, or rather focus on, that illustrate who did and did not follow the rules. First, the evidence viewed in the light most favorable to Mr. Jones shows that he either exhausted under the logic of Dole v. Chandler, or his administrative remedies were unavailable. Two, at a minimum, the district court should have held a pay-to-hearing before treating Nurse Lamb's affirmative defense for failure to exhaust as conclusively established. How could we make the first determination, given the evidence in the record, that as a matter of law, he exhausted because it was unavailable? I know he has the declaration, but there are also denials that he—there's an argument that he did receive it on the other side. So isn't that a factual determination we have to remand for? I think that that is a factual determination, and the reason why there should have been a pay-to-hearing, prior to summary judgment. It is— That's my point. If we agree with you that the declaration raises an issue of fact, isn't the appropriate remedy to send it back for a pay-to-hearing, rather than decide, as a matter of law, that he did exhaust and he can proceed? I think that the evidence in the record would permit this court to find that, as a matter of law, but I do agree that, at a minimum, it needs to be remanded for the required pay-to-hearing, so that the court can suss out whether or not remedies were exhausted or unavailable. Yeah. Mr. Bison, can I ask you on the same question? Yes. Okay. I think the documents we're talking about, or where the debate is about, are in the appendix at 83 and 87. You have that with you? Here, let me hold it up. It's this thing right here. Yes, Your Honor. Okay. That's—  You with me on that? Yes. Yes. 83. Okay. Those are documents we're talking about with the unresolved question of fact, a fact that is pertinent to whether remedies were exhausted, whether Mr. Jones, in fact, received a copy of those documents. Correct. Those documents being the final decision of the Chief Administrative Officer. Right. The documents that your adversary says he needed to include in his packet, his internal appeal packet, they were not included, and that's the failure to exhaust, because he never told us what the resolution of the Chief Administrative Officer was. Correct, Your Honor. And his response to that is, well, I would have, but I never got a copy of it. Correct. Okay. And that's— Those are the two documents. Those two pieces of paper are what we're talking about. Correct. Okay. And there's nothing—this is by way of confirmation, because I can't find it—there's nothing in the record that shows, in fact, that he received them.  Okay. And that pertains only to the two grievances ending in 349 and 331E. I know there are a lot of grievances filed here, but the ones that he didn't exhaust, we don't know why, are those two, correct? Yes. What we've termed the medical grievance, which is the 1907349, and then the emergency grievance— Right. —1908331E. Yes. Those are the only two grievances that are at issue in this appeal. If I may turn to exhaustion, just to flush out some of the ideas here, I think Dole v. Chandler should not be read so narrowly as Nurse Lamb would like it to be, but rather stand for the more broader position that once a prisoner has done all that they can do to exhaust, then they've exhausted. And just like Dole, Mr. Jones, in this case, did everything that he could. He filed two timely grievances. He followed up diligently throughout 2019 and 2020, and he never received the final decision from the Chief Administrative Officer. There's just nothing in the record that even suggests that he received it. And since the facts need to be construed in the light most favorable to Mr. Jones, which the district court failed to do, then a reasonable inference would be that he did, in fact, never receive them. And without them, he was statutorily barred from appealing. If by chance this court determines that Dole is inapplicable, then we would say in the alternative his remedies were unavailable. And as this court knows, the Prison Litigation Reform Act and the Supreme Court in their interpretation of Ross v. Blake stated very clearly that a prisoner only needs to exhaust those remedies that are available. And if they are unavailable, then they cannot and logically need not be exhausted, and more to the point here, the prisoner's lawsuit cannot be dismissed for lack of exhaustion when those remedies are unavailable. I would also point out at this juncture that Nurse Lamb failed to address the notion of unavailable remedies in the briefing, and therefore has implicitly conceded that point. The Ross v. Blake court set forth a series of, and this court has also elucidated some of those types of unavailable remedies, and there's one really key one that I'd like to focus on with my time, and that is the concept of a dead end. And I think that this case is a prime example of a dead end. In this case, again, there's no evidence that he ever received those final decisions without which he was barred from appealing. And this court has said in multiple cases that remedies are available when prison, unavailable, excuse me, when prison officials fail to respond to the grievance or indefinitely delay in responding to the grievance. That is a dead end. Mr. Jones had nothing else he could do other than file this lawsuit. Can I ask you a question about the district court decision and the district court reasoning? Certainly, Your Honor. Just to get the benefit of your perspective on it. The passage in the district court opinion that everyone is focused on, understandably so, comes on page 8. And it's there that the district court observes that Jones did attach his original grievance documentation to his complaint.  Yes, sir. I'm with you. And then from there, the court concludes by saying, therefore, Plaintiff for Jones's assertion that he was unable to appeal is simply not credible. Correct. Okay. Let's set aside whether you can do credibility at the dismissal phase like this. Set that aside. Okay. I think what, and you're going to say, well, that's a big set aside. I know that. I know that. You're clear on that.  I think, I'm not sure the district court, with all respect, I'm not sure the district court was grappling with the substance of the argument, with the kind of content of the argument, if you will, that Mr. Jones was advancing. In other words, his argument, as I understand it, is I can't attach those two documents that I referred to, which show the resolution of the chief administrative officer, because I never received them. I can't attach something I never got. Correct. Okay. If you want to see the original grievance that I followed, or that I filed, grievance is plural. Yes. And what happened at the counselor level, well, sure, here, they're attached. Yes. But that passage in the district court opinion is not, it's not grappling with the position of your adversary that the failure to exhaust is because of the failure to attach the resolutions of the chief administrative officer. In other words, it's not even responsive to what is being litigated. Correct. I think that it's several . . . Or have I misread that? No. I think that the district court failed to grapple with several of the arguments made by Mr. Jones, including that one. And the credibility point here, which is misleading, and should have been dealt with at a pay-to-hearing, doesn't go to that point about whether or not the decision of the chief administrative officer was attached. Yeah. I mean, the . . . I'm sorry. Go ahead. Please, go ahead. No, go ahead. I was just going to say, the credibility issue, your credibility point is very straightforward. It's like, there's one and only one person that knows whether he received this.  And his name is Jones. Well, hypothetically, somebody at the prison, if they had a good record system, that could help suss it out at live testimony. Well, there's not . . . Jones . . . But that's it. Jones has filed a sworn declaration . . . Correct. Says he doesn't have it. Correct. So there's really not much else that he, Jones, can do on this point. Or any point. That's the theme here. He's done everything he can. Right. So, now, that, his position, that he never received it, it's either, at a Pavey hearing, going to be credible or not credible. Yes. But we can't judge it on, within the four corners of the affidavit, can we? No. In your preparation, did you get a sense as to how often Pavey has been implemented by the district courts in the circuit? I suppose to answer that question, yes. I did get a sense for that. And I think that the district court, in my opinion, or district courts, rather, do regularly conduct Pavey hearings. And I think, importantly, what I saw was district courts suspente, asking for Pavey hearings. Not waiting for somebody to bring it along, but saying, look, we've got a failure to exhaust that's being argued here. The correct vehicle for figuring that out is Pavey hearing . . . Let's straighten this out, ab initio, get this case on the track. Correct. Not fool around with it. Yes. And we have argued it. We have cited it quite a bit, haven't we not? Cited Pavey? Yeah. Yes, Your Honor. Do you know by chance how other circuits, what they've done, have they followed Pavey? I'm afraid I don't know, Your Honor. Okay. It's always kind of interesting and important for us to know whether we are in the heartland of cases and approaches, you know, within the country. I mean, after all, these circuits are just administrative subdivisions when you get down to a federal judiciary. Sure. Sure. I suppose the only thing that I would say on that point . . . You have no aspect of sovereignty to them, even though we talk about law of the circuit. And I just wondered what other circuits have done as a result. The only thing that I would add, and then I'll reserve the rest of my time for rebuttal, is that I think the logic of Pavey is well-founded. with general concepts of the Prison Litigation Reform Act, and so I would be surprised if this court is an outlier in that respect. Thank you. I think . . . I don't know if your research showed this, but I think in the last maybe 10, 15 years, given some case law from this circuit, the district courts around the circuit have been much more attuned to Pavey hearings, which is why you're saying the sua sponte. Yes, Your Honor. But there were a couple of opinions from this court that changed maybe the practice we used to have. Yes, Your Honor. Yeah. And I suspect you would add that Pavey makes perfect sense in light of the rationale of Ross v. Blake . . . Yes. . . . that to answer whether remedies are available or unavailable is often going to require factual fact-finding. Correct. Yeah. And does in this case. Yeah. All right. I'll reserve the rest of my time for rebuttal. Thank you. Okay. Yep. Very well. Mr. Warner, good morning. Nice to see you. Morning, Judge. Good morning. I'm Matt Warner here on behalf of Defendant Appellate Amanda Lamb. I largely don't disagree with my opponent on the crux of why we're here and what this is about. I do think it's a fairly simple question as to whether or not the district court appropriately resolved what appears to be a factual dispute. Pavey, I think, certainly grants the court the ability to do that. Do you agree, Mr. Warner, that if the court should have considered the declaration of Mr. Jones, that there is an issue of fact that required a Pavey hearing? Yes. I would concede that point. If the court found that there was a genuine issue of fact, I don't believe it was appropriate to resolve that without a Pavey hearing. A little bit different. If the court, just the precursor to that, if the declaration had been considered by the court, that the declaration creates an issue of fact requiring a Pavey hearing. I don't necessarily agree that the declaration in and of itself creates a genuine dispute of fact. Why not? He says he didn't receive the final decision from the grievance officer or the chief administrative officer, so he couldn't exhaust his administrative remedies. Why wouldn't that, the fact that he is saying, I didn't receive what I needed to exhaust, why wouldn't that create an issue of fact? Because I think the court can look to other things that were in the record to reach the conclusion that that is not a genuine dispute. Such as? Such as . . . Doesn't that require a credibility determination of Mr. Jones, where ultimately the court may come out that way, but just on the paper? I think that the court can look to the topic that was brought up by Your Honors, the issue of Mr. Jones attaching his grievance paperwork to his complaints. How would that create an issue of fact here when that grievance work did not include the final determination by the chief administrative officer, which is what he said I didn't get? My understanding of that system is that the grievance is sent off and then the grievance in its entirety is returned to the inmate along with the responses. I don't think it's unreasonable for the district court to reach the conclusion that it is absurd or irrational to assume that the administrative review board would go so far as to return that grievance form and not also return their findings. I think . . . The difficulty that I think you have, or the difficulty for your client here, is that if you had evidence that was directly, that spoke directly to the return of the administrative processing of the grievances to Mr. Jones, I think it gets to be a harder question. For example, if you had evidence that we know from a log and we know from our ordinary practices, which are the following, that as a matter of fact, the chief administrative officer's decision was delivered to him in the prison mail on X date. You just don't have that here. You're a step removed from that. I don't disagree with that, Judge. As someone who practices fairly extensively in this arena, I certainly will not disagree that some form of inmate receipt, mail receipt system within the Illinois Department of Corrections would be nice. But, at least to my knowledge, it does not exist. Even if it . . . I mean, it doesn't have to be that we have the inmate signature on the equivalent of the green U.S. postal card. But, you don't . . . your client here did not even come forward with, I think, what you would hope is available, a detailed articulation of the process that way. That's where I think Mr. Jones' point of, look, I really can't do anything other than give you this declaration. Sure. My client is a nurse who works for a third-party contractor. I'm talking a little bit more broader.  Yeah. Sure. I mean, Amanda Lamb has no role within the grievance procedure of the Illinois Department of Corrections. And, again, I don't disagree that that would clean this up substantially. I also don't disagree that a payee hearing would have cleaned this up substantially. My argument is simply that, one, I don't believe that the grievances were rendered unavailable. I think the case law on that is narrower than Mr. Jones wants to present. I think it does require some sort of action on behalf of the prison, something that's more than simply a lack of work. Wouldn't you need a payee hearing to make that determination? Availability? Yes. If he's saying it wasn't available because I didn't get the final determinations back, don't you have to make a determination as to whether or not he got those? On the factual context, and I may have misspoken. I'm talking more to the Dole analysis here. In the Dole case, the prison official admitted that he had, I believe it was lost or misfiled or something, the relevant grievance. There was some sort of action that was taken on behalf of the prison that was, if not malicious, at least negligent that led to the situation in which Mr. Dole was unable to exhaust his remedies and therefore the remedies were considered exhaustive because he went as far as he could. I don't think that's present here. I don't think there's anything suggesting that there was thwarting or misdirection. No, I don't think there's, and I don't think that's his, and I appreciate your candor. That's not his, his position is not that, you know, the chief administrative officer is a big hoax. They don't even exist. There's no such thing as an administrative review board. That's not his argument, right? And you've acknowledged that.  His point is that the reason it's not available, you know, quote, unquote, is because I can't, I can't trigger the review of the administrative review board without attaching the appropriate paperwork. I can't attach the appropriate paperwork unless I, in fact, received it, right? And that's what he means. He means availability at a narrower level. Not that this is a charade or a hoax or something like that. Right, and I'm just stating that I think that that charade or hoax, to use your Honor's own words, is what would be required for Dole's purposes. Yeah, I mean, look, that, you're in a tough spot. I mean, and that, you know, if there's something going on in the administrative, you know, that it's really affirmatively misleading prisoner, I mean, that, the department's in a tough position at that point.  Yes. Okay. Mr. Warner, is there anything in the record, from your perspective, that shows that he actually received copies of these final decisions other than your argument that the attachment of the grievance itself is evidence of that? Nothing concrete outside of inferences. Okay. I acknowledge the pavy in play of that assertion by me. Okay. If your Honor's have no further questions, I have nothing else. No, Mr. Warner, thank you. I really, greatly appreciate your candor. Thank you. Okay, Mr. Beissel, you've got a little time left. Yeah, just a few points, Your Honor. The first point that I would like to make is simply a quote, rather, from this court in Piles v. Nuobasi from 2016, which I think is particularly applicable here, where we don't have any evidence that he did receive this, but we're dealing with an affirmative defense that Nurse Lamb failed to carry that burden, but it was her burden to present evidence in support of a failure to exhaust. And in Piles, this court said, because defendant provided no evidence that they timely and accurately transmitted the grievance response, they do not enjoy a presumption of receipt. And that's exactly what the district court did. They gave them a presumption that this actually happened when, in fact, there's no evidence that it did. I am pleased to hear that the opposing counsel agrees that the pavy hearing should have happened. I think, at this point, we all agree that the pavy hearing should have happened and that it should be remanded. I'm not sure he went quite that far, but . . . What I do want to say, though, Your Honors, is that I . . . we do maintain, and this is in the briefing, that this case should be reversed and remanded. So, not just for the pavy hearing, but the summary judgment was inappropriately granted, and that should be reversed. So, if this court decides to remand for trial, that would make sense, given the summary judgment. However, if it's just a pavy hearing, that would also be reasonable under the circumstances. Unless this court has any other questions for me, I don't want to waste the court's time. Okay. We appreciate the argument very much from both sides. Mr. Warner, again, thank you. Mr. Beissel, am I right that you and your firm accepted this on appointment from the court? Yes, Your Honor. We very much appreciate you doing that. Your firm does this on a regular basis. We appreciate the quality of the advocacy brought on behalf of Mr. Jones. So, with those thanks, we'll take the appeal under advisement. Thank you. Appreciate the opportunity.